IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LUDIE COLE,                                )
AIS  #182267,                              )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )    CIVIL ACTION NO. 2:09-CV-146-TMH
                                           )                 [WO]
                                           )
IBETH JONES,                               )
                                           )
          Defendant.                       )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This cause of action is before the court on a 42 U.S.C. § 1983 complaint filed by

Ludie Cole ["Cole"] on February 25, 2009. In his complaint, Cole challenges the

constitutionality of a behavior citation lodged against him during his incarceration at the

Easterling Correctional Facility ["Easterling"].  *Complaint - Doc. No. 1* at 1.  Cole also

alleges that his temporary confinement in the restrictive privilege dorm or "hot dorm"

subjected him to conditions that violated the Eighth Amendment, and complains that during

his time in this dorm he did not have physical access to the law library. *Id*. at 2-3. Cole

names Ibeth Jones, a correctional officer at Easterling, as the sole defendant in this cause

of action. Cole seeks an investigation of his claims and monetary damages for the alleged

violations of his constitutional rights.  *Id*. at 4.

The defendant filed special reports and supporting evidentiary materials addressing Cole's claims for relief. Pursuant to the orders entered herein, the court construes these reports as a motion for summary judgment. *Order of April 21, 2009 - Doc. No. 11*. Thus, this case is now pending on the defendant's motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes the defendant's motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendant has met her evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive the defendant's properly supported motion for summary judgment, Cole is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting

3

his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.

4

*Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can

be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Cole fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

#### A. Synopsis of Relevant Facts

On February 14, 2009, Jones conducted a routine shakedown or search of Cole as he exited the dining hall in an effort to curtail the entry of contraband into the general population of the prison. During this search, Jones found Cole in possession of twenty-

four alcohol pads.  At this time, Cole did not have a special needs form allowing him to maintain these pads in his possession.  Jones investigated the matter and determined that Cole did not have permission from medical personnel to keep the alcohol pads on his person.  *Defendant's Exhibit A (Affidavit of Jones) - Doc. No. 7-1* at 1.  Thus, the alcohol pads constituted contraband, and Jones issued a behavior citation to Cole for violation of rule number 64, possession of contraband.  *Defendant's Exhibit C (Behavior Citation) - Doc. No. 7-3* at 7.  Jones served Cole notice of the behavior citation, which Cole refused to sign.  *Id*.  As sanctions for Cole's violation of institutional rules, Jones recommended his placement in the restricted privilege dorm and loss of telephone, canteen and visiting privileges all for a period of thirty days.  *Id*.  The warden's designee, Capt. Kenneth Sconyers, affirmed issuance of the behavior citation and approved the recommended sanctions.  *Id.*; *Defendant's Exhibit B (Affidavit of Sconyers) - Doc. No. 7-2* at 1-2 ("I reviewed the specifics of the [possession of contraband] charge and concluded the sanctions recommended by Sgt. Jones were fair and consistent with those approved for other inmates who had received similar charges....  Inmate Cole is a diabetic inmate. All diabetic inmates, who undergo fingersticks in order to read sugar levels, receive an alcohol pad and a lancet upon entering our Health Care Unit during diabetic pill call.  Inmates have been instructed to sterilize the area of the finger prior to pricking it with the lancet.  Once the procedure is completed, the inmate is to discard the alcohol pad and lancet prior to exiting the Health Care Unit.  At no time was inmate Cole authorized possession of alcohol

7

pads outside the Health Care Unit....  [I]nmate Cole took advantage of the opportunity to remove a large number of alcohol pads from the Health Care Unit without permission....").

"The Restricted Privilege Dorm is established to isolate drug positive and disciplinary inmates from [the] General Inmate Population, to reduce overcrowding from the Segregation Unit, and to provide a mechanism by which an inmate can gradually earn his way back into the General Inmate Population." *Defendant's Exhibit F (Standard Operating Procedure for Restricted Privilege Dorm) - Doc. No. 10-2* at 1.  Inmates confined in the restricted privilege dorm are not allowed to eat or socialize with inmates from other dormitories; do not have access to store/telephone/television/visiting privileges, must be escorted by an officer to/from meals and pill call; are allowed forty-five minutes of daily yard time in the exercise area of the restricted privilege dorm; are allowed to maintain possession of all personal items, including religious materials; receive three meals per day; are provided access to showers on a regular basis; and may receive legal materials from the law library upon appropriate request.  *Id*. at 2.

Cole alleges that the behavior citation issued by Jones deprived him of due process and equal protection and resulted in excessive punishment in violation of the Eighth Amendment.  *Complaint - Doc. No. 1* at 2-3.  Cole also complains that during his time in the restricted privilege dorm he lacked physical access to the law library, and the conditions/restrictions which he endure while confined in the dorm constituted cruel and unusual punishment.

8

**B.  Absolute Immunity**

With respect to any claims Cole lodges against officer Jones in her official capacity, the defendant is entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear the defendant is a state actor entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from her in her official capacity.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

**C.  Behavior Citation Claims**

1. <u>Due Process</u>.  Cole complains that the imposition of sanctions against him without a hearing constituted a violation of his due process rights.  The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state."  *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Sandin*, 515 U.S. at 485-486, 115 S.Ct. at 2305

(disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him.  *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments Hoskins suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns.").  Thus, the deprivations imposed upon Cole based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300.  This court must therefore determine whether the actions about which Cole complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

11

As the Supreme Court has stated,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.  *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation."  *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293.  In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293.  For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.  The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.*  Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that limited time in the restricted

privilege dorm and the temporary loss of canteen/phone/visitation privileges "though

concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id.* at 485.  In light of the foregoing, it is clear that the sanctions levied against Cole fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  Consequently, under the law as established in *Sandin*, Cole's due process theory of liability provides no basis for relief and the defendant is therefore entitled to summary judgment on this claim.

2. Equal Protection.  Cole alleges that the defendant acted in violation of his right to equal protection by disciplining him for possession of contraband. *Complaint - Doc. No. 1* at 1 ("The defendant conscience poor judgment [and] disregarded the plaintiff ... in due Equal Protection by law in an act unprofessional....").  This claim entitles Cole to no relief.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed....  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him

13

based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendant, Cole bears the burden of producing evidence which would be admissible at trial sufficient to show the defendant provided more favorable treatment to other similarly situated individuals and acted in this manner due to intentional

14

discrimination.  *Celotex*, 477 U.S. at 322-324; *Anderson*, 477 U.S. at 249 (to preclude summary judgment, plaintiff must present significant probative evidence showing defendant provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendant in providing the challenged disparate treatment is required.  "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause.").  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252.

Cole fails to identify any similarly situated inmate who received differential favorable treatment from the defendant.  Thus, Cole's "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319.  This assertion likewise provides no basis for relief

> because [Cole] has not alleged ... that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest.  He has not even claimed that he was treated differently from others because of race, religion, or national origin [and actually concedes such is not the case]. *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration ... of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated

15

alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett,* 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require *identical* treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." (internal quotation marks omitted)); *see also Cruz v. Skelton,* 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet,* 467 F.3d at 1319 (emphasis in original). Thus, no equal protection violation occurred with respect to imposition of the behavior citation, and summary judgment is due be granted in favor of he defendant.

3. <u>Cruel and Unusual Punishment</u>. Cole maintains that the sanctions imposed are too severe for the nature of the citation. *Complaint - Doc. No. 1* at 2 ("I just do not think [it is] fair the punishment that they gave me for some diabetic alcohol pads."). This claim is without merit.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Seiter*, 501 U.S. 294 (1991). The mere imposition of the challenged sanctions, without more, does not establish a sufficiently grave deprivation so as to rise to the level of cruel and unusual punishment. Summary judgment is therefore due to be granted in favor of the defendant with respect to the alleged imposition of

unconstitutional punishment.[2]

## D. Access to Court

Cole asserts that while confined in the hot dorm he did not have physical access to the law library. The court construes this allegation as one asserting a denial of access to the court.

The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349. In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***.... [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations

---

[2] The court will subsequently address Cole's free-standing claims challenging the conditions of confinement to which he was subjected during his confinement in the restricted privilege dorm. *Infra* at 20-23.

omitted).  The Court further stated *that Bounds* did not require "that the State ... enable the prisoner to **discover grievances**, and to **litigate effectively** once in court....  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires."  *Id*. at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing.  *Id*. at 349.  Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims.  518 U.S. at 356.  "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.  When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury.  *Lewis*, 518 U.S. at 356.  Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement....  **[I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone**."  *Id*. at 356-357

18

(emphasis added).  "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance."  *Id*. at 360.  The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts.  *Id*. at 356.  A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.'  [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500."  *Id*. at 363.

Cole presents only a conclusory allegation of a constitutional violation and fails to allege any shortcomings with the legal access provided to him during his confinement in the restricted privilege dorm which actually hindered his efforts to pursue claims before this or any other court.  Although, while confined in the restricted privilege dorm, Cole alleges that he did not have physical access to the law library, it is undisputed that at all times while housed therein correctional officials allowed Cole access to legal materials acquired from the prison law library and delivered to him at the restricted privilege dorm and in no way inhibited his preparation of legal documents, filing of pleadings or processing of any cause of action.  Throughout the proceedings in this case, a case initiated during Cole's confinement in the restricted privilege dorm, Cole demonstrates that he is

both proficient and prolific at presenting and arguing the claims of his choice to the court of his choosing.   Nothing in the record indicates that the action about which Cole complains improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims.   Cole has failed to come forward with any evidence that the actions about which he complains deprived him of the ***capability*** of pursuing claims in this or any other court.   Thus, Cole does not establish he suffered the requisite injury, *Lewis*, 518 U.S. at 356, and the defendant is therefore entitled to summary judgment on the legal access claim. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show any actual injury); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (inmate entitled to no relief on access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage....").

### E.  Conditions of the Restricted Privilege Dorm

Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment.  *Rhodes*, 452 U.S. at 347.[3] "'[T]he Constitution does not mandate comfortable prisons.'  *Id.* at 349, 101 S.Ct. at 2400. If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'  *Id.* at 347, 101 S.Ct. at 2399.

---

[3] The Eighth Amendment applies to the states through the Fourteenth Amendment. *Rhodes,* 452 U.S. at 344-345.

Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware,  ... and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-1983. Thus, in order to survive summary judgment on his claims challenging the conditions of confinement at Kilby, Robinson is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To be deliberately indifferent, Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....

21

Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also 'draw that inference.' *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.").

The living conditions within a prison will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions ... alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency.... But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347. To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Cole complains that while confined in the restricted privilege dorm he (i) did not

receive store/phone/visitation privileges, (ii) could not attend religious services outside the dorm, (iii) sometimes stood in the rain for count, and (iv) walked to each meal while unable to mingle with inmates in general population. *Complaint - Doc. No. 1* at 2. The defendant does not deny the existence of various restrictions on privileges and a lack of free access to areas outside the restricted privilege dorm, but maintains that these restrictions did not improperly infringe on any constitutionally protected right. The defendant further maintains she at no time required Cole to stand in the rain.

Despite his contentions regarding conditions of the restricted privilege dorm, Cole fails to establish that these conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. Furthermore, Cole does not demonstrate any deliberate indifference or reckless disregard by the named defendant with respect to his health or safety. Specifically, Cole fails to identify any particular incident or condition from which the defendant could infer that a substantial risk of serious harm existed. Consequently, summary judgment is due to be granted in favor of the defendant on these claims. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.[4]

---

[4]To the extent that the complaint can be construed to allege a separate free exercise of religion claim under the First Amendment, Cole is likewise entitled to no relief. It is clear the limitation on attendance at church services did not improperly burden the exercise of Cole's religion, a religion Cole does not identify, because Cole while confined in the restricted privilege dorm retained the right to possess religious materials, could freely consult with the chaplain and maintained the ability to otherwise exercise his religious beliefs as he so desired. Thus, the

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendant's motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendant.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before March 15, 2012, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from

---

temporary inability to physically attend services did not unduly burden Cole's ability to engage in the free exercise of his religion and no violation of the First Amendment occurred.  Morever, any religious exercise claim would also fail even if pursued under the Religious Land Use and Institutionalized Persons Act of 2000 ["RLUIPA"] as Cole does not demonstrate a substantial burden on the practice of his religion. *Smith v. Allen*, 502 F.3d 1255, 1276-1277 (11th Cir. 2007 (citations omitted) ("To establish a *prima facie* case under [the applicable] section ... of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened....  A 'substantial burden' [is defined] as being 'significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.'... [T]o constitute a 'substantial burden' on religious practice, the government's action must be 'more than ... incidental' and 'must place more than an inconvenience on religious exercise.'").

attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner,* 661 F.2d at 1209 (adopting pre-October 1, 1981 opinions of the Fifth Circuit as binding precedent).

DONE, this 1st day of March, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE